# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**NELSON RUÍZ COLÓN; NELSON RUÍZ CORREA; EVANGELISTA COLÓN; LEINELMAR RUÍZ CACERES**
Plaintiffs,

v.

**ANDRÉS RODRÍGUEZ ELIAS Individually and as member of the Conjugal Partnership existing with Jane Doe; RAMÓN PÉREZ CRESPO, Individually and as member of the Conjugal Partnership existing with Jane Roe; ANTONIO MALDONADO TRINIDAD Individually and as member of the Conjugal Partnership existing with Carla Coe; PEDRO GOYCO AMADOR Individually and as member of the Conjugal Partnership existing with Dona Doe; FRANCISCO CARBÓ MARTÍ Individually and as member of the Conjugal Partnership existing with Grace Goe; ERNESTO FERNÁNDEZ Individually and as member of the Conjugal Partnership existing with Jackie Joe; VICTOR BURGOS BARROSO Individually and as member of the Conjugal Partnership existing with Jane Poe; ELBA GONZÁLEZ Individually and as member of the Conjugal Partnership existing with John Doe**
Defendants.

CIVIL NO.

JURY TRIAL REQUESTED

## COMPLAINT PURSUANT TO
## 42 U.S.C. SECTION 1983

**TO THE HONORABLE COURT:**

COME NOW Plaintiffs Nelson Ruíz Colón, Nelson Ruíz Correa, Evangelista Colón, Edgardo Ruíz Colón, Jansel Benito Ruíz Colón, Dagmar Ruíz Colón, Leinelmar Ruíz Caceres, and Gloricruz Reyes Rivera, through the undersigned counsel, and very respectfully allege and pray as follows:

I.    <u>INTRODUCTION</u>

1.    This is a civil rights Complaint under 42 U.S.C. Section 1983 against the Defendants for wrongful incarceration and violation of Plaintiffs due process rights pursuant to the 14th Amendment to the Constitution of the United States of America. Also the defendants bring this action pursuant to the 4th and 8th Amendments to the Constitution of the United States of America. Plaintiffs also bring this action pursuant to the Supplemental Jurisdiction of this Court as provided by 28 U.S.C. 1367, specifically under Section 5141 of the Laws of Puerto Rico Annotated (31 L.P.R.A. 1802).

2.    The individually named defendants are sued as a result of actions taken, within the course and scope of their employment, as prosecutors and/or law enforcement officials of the Commonwealth of Puerto Rico that resulted in the wrongful incarceration of plaintiff Nelson Ruíz Colón. For these actions, the conjugal partnership of the individual defendants is also liable to the plaintiffs.

3.    In 1994, after a jury trial, Plaintiff was found guilty, together with other defendants, of the first degree murder of Glorimar Perez. Defendants were also found guilty of kidnapping, rape, robbery and weapons law violations.

4.    The evidence of the prosecution in the case consisted mainly of the testimony of two drug addicts, who later recanted their testimony under oath, and of

forensic evidence. However the forensic evidence presented did not link plaintiff, or the other defendants, to the crime.

5.    Several of the forensic tests performed by forensic scientist were either inconclusive or could not be performed at all. No DNA, per se, was ever performed.

6.    On March 9, 1995, plaintiff Nelson Ruíz-Colón and the other defendants filed an appeal of the convictions which were ultimately affirmed by the Court of Appeals of the Commonwealth of Puerto Rico.

7.    On August 8, 1995, plaintiff Nelson Ruíz-Colón and the other defendants filed a motion requesting a new trial. On December 21, 1995, the Superior Court of Puerto Rico, Aguadilla Part, ordered a new trial and set a trial date of January 30, 1996. The prosecution filed an appeal of the order granting a new trial and as a result the Superior Court order was reversed on November 9, 1998.

8.    On May 2, 2000, plaintiff Nelson Ruíz-Colón and the other defendants filed a second motion requesting a new trial based on newly discovered evidence. In addition, plaintiff Nelson Ruíz-Colón and the other defendants requested that they be allowed to conduct DNA and ballistic tests of evidence in the possession of the Puerto Rico Institute of Forensic Sciences. On October 18, 2000 the Superior Court denied the requests, without holding a hearing; an appeal followed. On August 15, 2001, the Court of Appeals entered an order directing the Superior Court to hold an evidentiary hearing.

9.    Following an evidentiary hearing held on May 27-28 and June 1 and 11, 2009, the Superior Court denied the request for a new trial. Plaintiff Nelson Ruíz-Colón and the other defendants filed an appeal of the denial of a new trial. On April 17, 2012 the Court of Appeals affirmed the Superior Court's determination.

10.   While the second motion for a new trial was pending, plaintiff Nelson Ruíz-Colón, and the other defendants in the criminal case, filed a third motion for a new trial. On this occasion plaintiff Nelson Ruíz-Colón and the other defendants based their request on the recanting of a second government witness. On March 17, 2008, the Superior Court denied the third request for a new trial indicating that the second witness that recanted lacked credibility.

11.   On June 4, 2015, plaintiff Nelson Ruíz-Colón filed an action under 42 U.S.C.A. Section 1983 requesting that this Court order the DNA testing that the Superior Court of Puerto Rico had declined to order. During the course of the litigation in Civil 15-01754 (FAB), the Department of Justice of the Commonwealth of Puerto Rico agreed to conduct the DNA tests.

12.   Based on the results of the DNA testing, on June 2, 2016 plaintiff Nelson Ruíz-Colón requested that the Superior Court order a new trial. On June 7, 2016 the Superior Court ordered the holding of an evidentiary hearing which was held on June 10, 2016.

13.   On June 22, 2016, following the evidentiary hearing, the Superior Court ordered a new trial. In its order, the Superior Court noted that the recanting of the two main witness for the prosecution gained credibility as a consequence of the results of the DNA testing.

14.   On September 27, 2016, the prosecution informed the Superior Court that it lacked the evidence to prove the case beyond a reasonable doubt. Hence, on said date, the Superior Court proceeded to dismiss the case as to plaintiff Nelson Ruíz-Colón and the other defendants in the case.

II.        Jurisdiction and Venue

15.   This action is brought against the Defendants pursuant to 42 USC Section 1983 for the deprivation of civil rights secured by the Fourth, Eight and Fourteenth Amendments of the Constitution of the United States.

16.   Jurisdiction is founded upon 28 U.S.C. Section 1331 and 1343(a)(3)(4) and Section 1367(a).

17.   Venue is proper in this Court pursuant to 28 U.S.S.C. 1391 in that the acts and omissions which give rise to this action occurred  within this District and this Court otherwise has jurisdiction.

18.   This case presents an actual case in controversy arising under the Fourth, Eight and Fourteenth Amendments to the Constitution of the United States. This case also arises under the provisions of 42 U.S.C.A. section 1983 and under Section 5141 of 31 L.P.R.A., for which the plaintiffs invoke the Supplemental Jurisdiction of this Court.

III.        The Parties

19.   Plaintiff Nelson Ruíz Colón served almost twenty years of a life sentence imposed of a judgment entered by the Superior Court of Puerto Rico Aguadilla Part, for the alleged murder of Glorimar Perez in 1988.

20.   Plaintiff Nelson Ruíz Correa is the father of plaintiff Nelson Ruíz-Colón. He paid for all his litigation expenses during a period of more than twenty years and stood by his son during an ordeal that ended in the year 2016. He accompanied and provided support to his son during the process that initiated when plaintiff Nelson Ruíz Colón was identified as target of the investigation to his trial and twenty-year incarceration.

21. Plaintiff Evangelista Colón Defendant is the mother of plaintiff Nelson Ruíz-Colón. She accompanied and provided support to her son during the process that initiated when plaintiff Nelson Ruíz Colón was identified as target of the investigation to his trial and twenty-year incarceration.

22. Plaintiff Leinelmar Ruíz Caceres is the daughter of plaintiff Nelson Ruíz-Colón. She accompanied and provided support to her father during a substantial portion of his incarceration.

23. Defendant Andrés Rodríguez Elías, acting within the scope of his employment as an agent of the Department of Justice of the Commonwealth of Puerto Rico, acted as the chief prosecutor and investigator in the case that resulted in the conviction of plaintiff Nelson Ruíz-Colón. At present, defendant Andrés Rodríguez Elías is an attorney in the private practice of the law.

24. Defendant Jane Doe is the wife of defendant Andrés Rodríguez Elías. Jane Doe, together with Andrés Rodríguez Elías and the Conjugal Partnership constituted by them, are liable to the plaintiffs for the damages claimed in the complaint.

25. Defendant Ramón Perez-Crespo, acting within the scope of his employment as an agent of the Police of Puerto Rico, acted as the police chief investigator in the case that resulted in the conviction of plaintiff Nelson Ruíz-Colón. Pursuant to information and belief, at present, defendant Ramón Perez Crespo is retired from the police of Puerto Rico.

26. Defendant Jane Roe is the wife of defendant Ramón Pérez Crespo. Jane Roe, together with Ramón Pérez Crespo and the Conjugal Partnership constituted by them, are liable to the plaintiffs for the damages claimed in the complaint.

27. Defendant Antonio Maldonado Trinidad acting within the scope of his employment as an agent of the Department of Justice of the Commonwealth of Puerto Rico, participated in the investigation and prosecution that resulted in the conviction of plaintiff Nelson Ruíz-Colón.

28. Even though defendant Antonio Maldonado Trinidad knew and/or had reasons to believe that defendant Nelson Colón Ruíz was not responsible for the murder of Glorimar Perez, he filed and prosecuted a criminal action against him.

29. Defendant Carla Coe is the wife of defendant Antonio Maldonado Trinidad. Carla Coe, together with Antonio Maldonado Trinidad and the Conjugal Partnership constituted by them, are liable to the plaintiffs for the damages claimed in the complaint.

30. Pedro Goyco Amador acting within the scope of his employment as an agent of the Department of Justice of the Commonwealth of Puerto Rico, participated in the investigation and prosecution that resulted in the conviction of plaintiff Nelson Ruíz-Colón.

31. Defendant Pedro Goyco Amador, as Chief Prosecutor, failed to exercise adequate supervision of the prosecutors that were in charge of the prosecution of Nelson Ruíz Colón. Furthermore, Defendant Pedro Goyco Amador failed to fully and diligently investigate the recanting of the main prosecution witnesses. The causes of action brought against defendant Pedro Goyco Amador are strictly based on events of negligence, negligence in supervision and *repondeat superior.*

32. Pursuant to information and belief, even though defendant Pedro Goyco Amador had reasons to believe that defendant Nelson Ruíz Colón may not have been responsible for the murder of Glorimar Perez, he allowed prosecutors under his

supervision to file and prosecute a criminal action against him and later actively objected to a new trial.

33. Defendant Pedro Goyco Amador, pursuant to information and belief, directed, caused or authorized the accommodation of witness Heriberto Guzman in a hotel and, in addition, the disbursement of $1,500.00, as part of the amenities he received in exchange for his testimony against plaintiff Nelson Ruíz Colón and the other defendants in the criminal case.

34. Defendant Dona Roe is the wife of defendant Pedro Goyco Amador. Dona Roe, together with Pedro Goyco Amador and the Conjugal Partnership constituted by them, are liable to the plaintiffs for the damages claimed in the complaint.

35. Defendant Francisco Carbo-Martí acting within the scope of his employment as a Captain in the Police of Puerto Rico, acted as a supervisory agent in the case that resulted in the conviction of plaintiff Nelson Ruíz-Colón.

36. Defendant Grace Goe is the wife of defendant Francisco Carbo Martí. Grace Goe, together with Francisco Carbo Martí and the Conjugal Partnership constituted by them, are liable to the plaintiffs for the damages claimed in the complaint.

37. Defendant Ernesto Fernández acting within the scope of his employment as an agent of the Special Investigations Bureau of the Department of Justice of the Commonwealth of Puerto Rico ("NIE" by its Spanish acronym) , acted as an agent in the case that resulted in the conviction of plaintiff Nelson Ruíz-Colón.

38. Defendant Jackie Joe is the wife of defendant Ernesto Fernández. Jackie Joe, together with Ernesto Fernández and the Conjugal Partnership constituted by them, are liable to the plaintiffs for the damages claimed in the complaint.

39. Defendant Victor Burgos Barroso, acting within the scope of his employment as an agent of the Police of Puerto Rico, was an investigator in the case that resulted in the conviction of plaintiff Nelson Ruíz-Colón.

40. Defendant Jane Poe is the wife of defendant Victor Burgos Barroso. Jane Poe, together with Victor Burgos Barroso and the Conjugal Partnership constituted by them, are liable to the plaintiffs for the damages claimed in the complaint.

41. Elba González, acting within the scope of her employment as an agent of the Police of Puerto Rico, was an investigator in the case that resulted in the conviction of plaintiff Nelson Ruíz-Colón.

42. Defendant John Doe is the husband of defendant Elba González. John Doe, together with Elba González and the Conjugal Partnership constituted by them, are liable to the plaintiffs for the damages claimed in the complaint.

43. Defendants Jane Doe, Jane Roe, Carla Coe, Dona Doe, Grace Goe, Jackie Joe, John Doe and Jane Poe are fictitious names used to designate unknown defendants. The fictitious defendants will be substituted by the actual defendants once their names are discovered by plaintiffs.

IV.    Plaintiffs' Background

44. Plaintiff Nelson Ruíz Colón was born on September 26, 1967 and is presently 50 years old. He is the son of plaintiffs Nelson Ruíz Correa and Evangelista Colón. He has three brothers, plaintiffs Edgardo Ruíz, Jansel Benito Ruíz and Dagmar Ruíz. He has a daughter, Leinelmar Ruíz Caceres, who is presently 25 years old.

45.   Plaintiff Gloricruz Reyes Rivera is the common law wife of plaintiff Nelson Ruíz-Colón. Their relationship started while plaintiff Nelson Ruíz Colón was serving a life sentence. At present they live together as husband and wife.

46.   Plaintiff Nelson Ruíz Colón has a high school diploma and two years of accounting at the University of Puerto Rico Regional College in Aguadilla.

47.   He was employed, in 1987, by the medical emergencies service entity known as "Emergencias Médicas" in Rio Piedras, Puerto Rico. Thereafter he returned to school at "Instituto de Banca" where he did not complete a degree. Shortly thereafter he became employed at a family business, (a hardware store), in Aguada, Puerto Rico.

48.   Following the initiation of the investigation of the murder case, plaintiff Nelson Ruíz Colón was arrested and prosecuted for driving under the influence of alcoholic beverages. He had a clean record at the time the murder of Glorimar Perez took place.

V.        Relationship With The Victim and The Criminal Codefendants

49.   Plaintiff Nelson Ruíz Colón had known the victim, Glorimar Perez Santiago, for over ten years at the time of her death. They studied in the same school, Dr. Carlos González, from where they both graduated. They resided at a distance of about two blocks, one from the other, and always had a cordial relationship. Their relationship had never extended to more than a friendship.

50.   Regarding the two codefendants in the criminal case related to the murder of Glorimar Perez, Nelson Ortiz Alvarez and Jose Caro, plaintiff Nelson Ruíz Colón had no relationship with either. He knew Nelson Ortiz Alvarez because they had crossed paths

in the town of Aguada on several occasions and was also aware that Jose Caro was the owner of a pizza restaurant.

### VI.     The Criminal Case

51.  The government alleged the existence of a conspiracy to rape and murder Glorimar Perez. It was alleged that as part of the conspiracy the victim was taken to a deserted part of Jobos Beach in Isabela and that a drug addict, Luis Martinez Rivera, was paid in order to dispose of her vehicle.

52.  At trial the drug addict testified that he arrived at the scene with the plaintiff and that the victim was already there, in her car, with the other two defendants. He stated that he was present during the murder in which all three defendants participated.

53.  According to Luis Martinez Rivera, following the murder he was paid in order to dispose of the victim's vehicle. Although his intention was to take the vehicle to another location, upon reaching the town of Aguadilla he left the car there. When he returned to pick up the vehicle he became scared when he noticed the presence of the police and abandoned the car there.

54.  A second drug addict, Heriberto Guzman Ocasio, also testified for the government. Guzman testified that Martinez Rivera conveyed to him details of the murder and that he met all three defendants who continued to pay Martinez Rivera in order to keep his mouth shut.

### VII.     Forensic Evidence

55.  At trial testimony was presented to the effect that none of the fingerprints obtained from the victim's vehicle matched the fingerprints of any of the defendants, nor that of the individual who allegedly drove the vehicle to the location, Martinez Rivera.

56.   A test conducted of the finger nails of the victim revealed the existence of blood, however, its origin could not be determined. Also, hair was discovered, adhered to the finger nails, whose origin could not be determined.

57.   Other forensic evidence included a man's white underwear with undetermined stains, a pink blouse, a yellow ladies 'underwear with undetermined stains, a white ladies ' trouser with undetermined stains, a blue short-sleeved shirt bearing the "Don Giovanni" trademark, a paper tissue with blood stains, among others. No forensic evidence linked Plaintiff to the crime scene.

58.   During trial the prosecution alleged that the victim was raped, sodomized and murdered by the criminal defendants including plaintiff Nelson Ruíz Colón. A witness for the prosecution described a violent scene of rape, murder and physical abuse of the victim which included repeatedly striking her with fists.

59.   Forensic evidence, presented at trial by the prosecutors, was said to contain blood, hair and semen that could not be discarded as belonging to the criminal defendants, including plaintiff Nelson Ruíz Colón.

60.   The forensic evidence was used by the prosecutors during the trial in order to support the testimony of the two main witnesses, Luis Martinez Rivera and Heriberto Guzman Ocasio. The purpose of the evidence was to establish that blood, hair and semen were discovered in the scene of the crime and that the same could belong to the criminal defendants, thus substantiating the testimony of the prosecution's main witnesses that the charged rape and murder had indeed occurred as described by them.

61.   Based on the evidence presented at trial, which included forensic evidence that did not connect the criminal defendants to the scene of the crime and false testimony

provided by the prosecution's main witnesses, the three criminal defendants were found guilty by a jury and sentenced to life in prison.

VIII.    Post-Trial Evidence

62.    Following the trial, the government's main witnesses recanted. Luis Martinez Rivera and Heriberto Guzman Ocasio provided sworn statements indicating that they had lied under oath during the course of the trial. Their sworn statements exonerate Plaintiff from any wrongdoing.

63.    A private investigator, Antonio Santana, interviewed a lady by the name of Nilsa Baucage who indicated to him that her brother, Rafael Baucage, had admitted to her that he murdered Glorimar Perez.

64.    Rafael Baucage was at the time the owner of a pizza restaurant in Aguadilla. Ana Chavez, a witness interviewed by a private investigator, indicated that she saw Glorimar Perez playing tennis on or about the same time it was alleged by prosecutors that she was abducted. The witness indicated that she later saw her entering the pizza restaurant owned by Rafael Baucage. Ana Chavez and Glorimar Perez studied together at the Aguadilla UPR Regional College.

65.    Also, the private investigator interviewed Gilberto Rodríguez, the owner of "Hunter" gun shop in Isabela, Puerto Rico. Mr. Rodríguez indicated that Baucage had sold him a Smith & Wesson 38 caliber revolver. Glorimar Perez was murdered with 38 caliber bullets. The sister of Rafael Baucage, Nilsa Baucage, corroborated that she went with her brother to Hunter in order to sell the weapon.

66.    Another witness, Luis Piñeiro, indicated that Ms. Nilsa Baucage informed him that she loaned her car to Rafael Baucage and that when it was returned she noticed

that inside the trunk there were blood stains. From that moment on she suspected that her brother had murdered Glorimar Perez.

67.   Rafael Baucage left the jurisdiction and the recent efforts by the Department of Justice, through his attorney, to contact him for an interview have been unsuccessful.

68.   Plaintiff Nelson Ruíz Colón exhausted all remedies made available by the Laws of The Commonwealth of Puerto Rico in order to obtain a new trial or the re-testing of the forensic evidence.

69.   Motions requesting new trial and requesting the re-testing of the forensic evidence were filed by Plaintiff Nelson Ruíz Colón and the other defendants in the criminal case to no avail. Also the appeal process was exhausted.

70.   In 2014, plaintiff Nelson Ruíz Colón requested that the Department of Justice of the Commonwealth of Puerto Rico allow the re-testing of the forensic evidence. In specific, Plaintiff Nelson Ruíz Colón requested that the evidence be submitted to new DNA testing. For this, Plaintiff Nelson Ruíz Colón offered to cover all costs for re-testing at a facility chosen by the Department of Justice of the Commonwealth of Puerto Rico. The Department of Justice never answered the request.

71.   Following the filing of actions in local and federal courts, the Department of Justice agreed to new DNA testing. None of the forensic evidence re-tested connected plaintiff Nelson Ruíz Colón, nor the other defendants, to the scene of the crime.

IX.     Violations of Constitutional Rights and Negligence

72.   Following the trial and conviction of plaintiff Nelson Ruíz Colón, the prosecution's main witnesses provided sworn statements and testimony under oath to the effect that they were never at the scene of the murder of Glorimar Perez nor had any

knowledge that the codefendants in the criminal case, including plaintiff Nelson Ruíz Colón, were in any manner involved with the murder.

73. Both Luis Martinez Rivera and Heriberto Guzman had criminal records and had committed crimes in the general vicinity were the body of Glorimar Perez was found. They were pressured by several of the defendants herein in order to provide any information in their possession related to the murder of Glorimar Perez. Although both witnesses indicated that they had no knowledge of the facts surrounding the murder they both agreed to cooperate not only because of the pressure being exercised by several of the defendants herein but also due to the offers of immunity that extended to the their criminal responsibility in other cases.

74. From the onset, the problem with the cooperation that Luis Martinez Rivera and Heriberto Guzman agreed to offer was that they lacked knowledge of the specific events surrounding the crime. This was due to the fact that they did not witness nor had any knowledge of the murder of Glorimar Perez. Luis Martinez Rivera and Heriberto Guzman had a general knowledge of the events because the case was of great public interest and many details had become public through the media covering the criminal investigation. Luis Martinez Rivera and Heriberto Guzman received specific information regarding the facts of the criminal case, from several of the defendants, in order to supplement the general public knowledge they possessed. Several of the defendants herein provided Luis Martinez Rivera and Heriberto Guzman specific information of events that were not known to them, with the purpose of filing a fabricated case in violation of the constitutional rights of plaintiff Nelson Ruíz Colón.

75.  Defendant Andrés Rodríguez Elías violated the constitutional rights of the Plaintiffs in that he knew and/or had reasons to believe that defendant Nelson Colón Ruíz was not responsible for the murder of Glorimar Perez, he filed and prosecuted a criminal action against him. Among other actions, defendant Andrés Rodríguez Elías provided the two main witnesses in the criminal trial, with statements and photographs that were used by the witnesses to concoct a false story regarding their personal knowledge of the facts of the case.

76.  Defendant Andrés Rodríguez Elías went with the government's main witness, Luis Monserrate Martínez, to the location where the body of the victim was found in order to record a video and familiarize the witness with the scene; this notwithstanding the fact that defendant Andrés Rodríguez Elías knew, or had reasons belief, that Luis Monserrate Martínez had never been at the scene and had not witnessed the murder.

77.  Defendant Andrés Rodríguez Elías, pursuant to information and belief, threatened witness Heriberto Guzman with jail, with placing his wife in jail and with delivering his children to the Department of Social Services if he did not provide a false sworn statement against plaintiff Nelson Ruíz Colón and the other defendants in the criminal case.

78.  Defendant Andrés Rodríguez Elías, pursuant to information and belief, directed, caused or authorized the accommodation of witness Heriberto Guzman in a hotel and, in addition, the disbursement of $1,500.00, as part of the amenities he received in exchange for his testimony against plaintiff Nelson Ruíz Colón and the other defendants in the criminal case.

79. Defendant Andrés Rodríguez Elías, pursuant to information and belief, would meet with key witnesses in the case, against plaintiff Nelson Ruíz Colón, in order to accommodate their testimony to the facts of the case as charged. This for the purpose of making the testimony credible to the jury. Andrés Rodríguez Elías knew, or had reasons to belief, that the testimony to be offered by the witnesses to the jury was false and fabricated.

80. Defendant Andrés Rodríguez Elías, pursuant to information and belief, requested witness Luis Martínez to cry in open court in order to make his testimony more credible. When Luis Martinez recanted his prior testimonies, he indicated that defendant Andrés Rodríguez Elías congratulated him for his testimony and characterized him as "an artist."

81. Defendant Andrés Rodríguez-Elías, pursuant to information and belief, provided information to witness Luis Martínez regarding the make, color and model of the victim's vehicle since due to the fact that he did not participate in the murder he lacked specific details regarding a vehicle he had never seen.

82. Defendant Andrés Rodríguez-Elías, pursuant to information and belief, instructed Luis Martinez as to how he had to bend in open court in order to show the angle and distance from which the victim was shot even though the witness was not present at the scene of the crime and lacked any information regarding the manner in which the victim was shot.

83. Pursuant to information and belief, Defendant Ramón Pérez Crespo violated the constitutional rights of defendant Nelson Ruíz-Colón in that he instigated the two prosecution main witnesses, Luis Martínez Rivera and Heriberto Guzman Ocasio, to

testify against plaintiff Nelson Ruíz Colón even though he knew, or had reasons to believe, that the two witnesses had no knowledge of the facts of the case.

84. Pursuant to information and belief, Defendant Ramón Pérez Crespo also instilled fear on the two main witnesses, in order to motivate and induce them to lie, by falsely telling them that the defendants in the criminal case had plans to kidnap them.

85. Pursuant to information and belief, Defendant Ramón Pérez Crespo provided the two main witnesses in the criminal trial, with statements and photographs that were used by the witnesses to concoct a false story regarding their personal knowledge of the facts of the case.

86. Pursuant to information and belief, defendant Ramón Pérez Crespo provided witness Luis Monserrate with money, in order to travel to the United States mainland, when the witness threatened to make public that the case against plaintiff Nelson Ruíz Colón and the other defendants was based on fabricated evidence.

87. Pursuant to information and belief, defendants Ramón Pérez Crespo offered witness Heriberto Guzman twenty five thousand ($25,000) in order to provide false testimony against plaintiff Nelson Ruíz Colón and the other defendants in the criminal case.

88. Pursuant to information and belief, during the criminal trial of plaintiff Nelson Ruíz Colón, Ramón Pérez Crespo caused a mortuary wreath of flowers ("crown" of flowers) to be delivered to himself. The wreath had a fabric band with the inscription "Rest in Peace Perez Crespo and Glorimar Perez." The delivery of the mortuary wreath of flowers to defendant Perez Crespo, which became a news event, was fabricated in order

to create the impression on jurors and the public that he was being threatened by the defendant Nelson Colón Ruíz and the other defendants in the criminal case.

89. Pursuant to information and belief, defendants Ramón Pérez Crespo offered potential witness Vidal Arreizaga two thousand ($2,000.00) in order to provide false and fabricated evidence linking plaintiff Nelson Ruíz Colón and José Caro, a codefendant in the criminal case, with the murder of Glorimar Pérez.

90. Defendant Antonio Maldonado Trinidad violated the constitutional rights of defendant Nelson Ruíz-Colón in that knowing or having reasons to believe that Plaintiff Nelson Colón Ruíz was not responsible for the murder of Glorimar Perez, he filed and prosecuted a criminal action against him

91. Defendant Antonio Maldonado Trinidad, pursuant to information and belief, provided the two main witnesses in the criminal trial, with statements and photographs that were used by the witnesses to concoct a false story regarding their personal knowledge of the facts of the case.

92. Defendant Antonio Maldonado Trinidad, pursuant to information and belief, directed, caused or authorized the accommodation of witness Heriberto Guzman in a hotel and, in addition, the disbursement of $1,500.00, as part of the amenities he received in exchange for his testimony against plaintiff Nelson Ruíz Colón and the other defendants in the criminal case.

93. Defendant Antonio Maldonado Trinidad, pursuant to information and belief, would meet with key witnesses in the case against plaintiff Nelson Ruíz Colón in order to accommodate their testimony to the facts of the case as charged. This for the purpose of making the testimony credible to the jury. Antonio Maldonado Trinidad knew,

or had reasons to belief, that the testimony to be offered by the witnesses to the jury was false and fabricated.

94. Defendant Antonio Maldonado Trinidad, pursuant to information and belief, provided information to witness Luis Martínez regarding the make, color and model of the victim's vehicle since due to the fact that he did not participate in the murder he lacked specific details regarding a vehicle he had never seen

95. Defendant Antonio Maldonado Trinidad, pursuant to information and belief, contacted witnesses, including Heriberto Guzman, and in a threatening manner asked them not to recant their original testimony. At the time the witnesses were preparing to testify that the case against plaintiff Nelson Ruíz Colón, and the other defendants in the criminal case, was filed and prosecuted with fabricated evidence.

96. Pursuant to information and belief, Defendant Antonio Maldonado Trinidad instructed Luis Martinez as to how he had to bend in open court in order to show the angle and distance from which the victim was shot even though the witness was not present at the scene of the crime and lacked any information regarding the manner in which the victim was shot.

97. Pedro Goyco-Amador violated the constitutional rights of Plaintiff Nelson Ruíz-Colón in that he had either constructive or actual knowledge of the alleged constitutional violations carried out by personnel under his supervision.

98. Pedro Goyco-Amador directly supervised the work being performed by the prosecutors in the investigation of the murder of Glorimar Peréz. As a seasoned prosecutor himself, he observed how his prosecutors manipulated the reluctant and

inconsistent testimony of two criminals who were offered immunity and a monetary compensation in order to testify against Plaintiff Ruíz-Colón.

99. Although the criminal investigation of the murder of Glorimar Perez took several years and the prosecutors under his supervision had repeatedly been unable to link Plaintiff Ruíz-Colón to the murder, Defendant Goyco-Amador acquiesced or was grossly negligent in authorizing the filing of the criminal case. Defendant Goyco-Amador authorized the filing of the criminal action against Plaintiff Ruíz-Colón without requesting an adequate corroboration of the testimony of two individuals, with criminal record, that had repeatedly provided inconsistent versions and who later admitted to a fabrication of the evidence.

100. Defendant Pedro Goyco-Amador had an opportunity to mitigate the harm that he had bestowed on the Plaintiffs due to his negligence in supervision. When the only witnesses against Plaintiff Ruíz-Colón recanted and admitted to perjury a new trial was requested. Again Defendant Pedro Goyco-Amador incurred in gross negligence by failing to investigate and corroborate the new version provided under oath by the witnesses which exonerated Plaintiff Ruíz-Colón from any responsibility.

101. During the hearings held to consider Plaintiff Ruíz-Colón's motion for a new trial, Defendant Pedro Goyco-Amador personally appeared and argued against the granting of the request. Defendant Goyco-Amador argued against the granting of the new trial even though a reasonable prosecutor would have conducted a more thorough investigation of the recanting, would have made a reasonable attempt to corroborate the new version provided by the witnesses, and would have agreed to a new trial. In order to

deny Plaintiff Ruíz-Colón a new trial, Defendant Goyco-Amador availed himself of the same fabricated evidence used in the original prosecution of the case.

102. As a supervisory official, Pedro Goyco-Amador is liable under Section 1983 for the behavior of his subordinates since the behavior of his subordinates resulted in a constitutional violation. The actions of Pedro Goyco-Amador as supervisor were affirmatively linked to that behavior such that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference.

103. As a supervisory official, Pedro Goyco-Amador had either constructive or actual knowledge notice of the alleged violations. His failure to stop the conduct constitutes a constitutional violation. Defendant Pedro Goyco-Amador had actual knowledge or at least exercised willful blindness that resulted in damages to the Plaintiffs. As a supervisor, Pedro Goyco-Amador may be held liable for what he did (or fail to do) since his behavior demonstrated deliberate indifference to conduct that is itself violative of constitutional rights.

104. Both by his approval of the original criminal filing and by his personal and direct participation in opposing a new trial, Defendant Goyco-Amador is affirmatively connected to the subordinate's violative act or omission. This affirmative connection included tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct.

105. Defendant Pedro Goyco authorized the accommodation of witness Heriberto Guzman in a hotel and, in addition, the disbursement of $1,500.00, as part of

the amenities he received in exchange for his testimony against plaintiff Nelson Ruíz Colón and the other defendants in the criminal case.

106. Defendant Francisco Carbo-Martí violated the constitutional rights of defendant Nelson Ruíz-Colón in that, pursuant to information and belief, he instigated the two prosecution main witnesses, Luis Martínez Rivera and Heriberto Guzman Ocasio, to testify against plaintiff Nelson Ruíz Colón even though he knew, or had reasons to believe, that the two witnesses had no knowledge of the facts of the case.

107. Defendant Francisco Carbo-Martí went with the government's main witness, Luis Monserrate Martínez, to the location where the body of the victim was found in order to record a video and familiarize the witness with the scene; this notwithstanding the fact that defendant Francisco Carbo knew, or had reasons belief, that Luis Monserrate Martínez had never been at the scene and had not witnessed the murder.

108. Defendant Francisco Carbo-Martí, pursuant to information and belief, threatened witness Heriberto Guzman with jail, with placing his wife in jail and with delivering his children to the Department of Social Services if he did not provide a false sworn statement against plaintiff Nelson Ruíz Colón and the other defendants in the criminal case.

109. Defendant Ernesto Fernández violated the constitutional rights of defendant Nelson Ruíz-Colón in that, pursuant to information and belief, he instigated the two prosecution main witnesses, Luis Martínez Rivera and Heriberto Guzman Ocasio, to testify against plaintiff Nelson Ruíz Colón even though he knew, or had reasons to believe, that the two witnesses had no knowledge of the facts of the case.

110. Defendant Ernesto Fernández violated the constitutional rights of defendant Nelson Ruíz-Colón in that, pursuant to information and belief, provided Luis M. Martínez with a demonstration as to the gestures he should make in open court to describe the rape of the victim Glorimar Perez in order to make his testimony more credible.

111. Defendant Victor Burgos Barroso violated the constitutional rights of defendant Nelson Ruíz-Colón in that he, pursuant to information and belief, instigated the two prosecution main witnesses, Luis Martínez Rivera and Heriberto Guzman Ocasio, to testify against plaintiff Nelson Ruíz Colón even though he knew, or had reasons to believe, that the two witnesses had no knowledge of the facts of the case.

112. Defendant Victor Burgos Barroso, pursuant to information and belief, would meet with key witnesses in the case against plaintiff Nelson Ruíz-Colón in order to accommodate their testimony to the facts of the case as charged. This for the purpose of making the testimony credible to the jury. Victor Burgos Barroso knew, or had reasons to belief, that the testimony to be offered by the witnesses to the jury was false and fabricated.

113. Defendant Victor Burgos Barroso, pursuant to information and belief, requested witness Luis Martínez to cry in open court in order to make his testimony more credible. When Luis Martinez recanted his prior testimonies, he indicated that defendant Victor Burgos Barroso congratulated him for his testimony and characterized him as "an artist."

114. Defendant Victor Burgos Barroso, pursuant to information and belief, provided witness Luis Martinez with photographs of a vehicle owned at the time by

plaintiff Nelson Ruíz Colón. From the photographs, Luis Martinez was then able to identify in court a vehicle that he had never seen before. Pursuant to information and belief, defendant Victor Burgos Barroso provided the photographs to the witness knowing that Luis Martinez had never seen the vehicle before.

115. Elba González violated the constitutional rights of defendant Nelson Ruíz-Colón in that, pursuant to information and belief, she provided custody to witnesses that were in the process of testifying during the preliminary proceedings and trial of Nelson Ruíz-Colón. Witness Luis Martínez Rivera has testified under oath that defendant Elba González provided him, while waiting to testify in court or during recess, photographs and a recordings that would assist the witness during testimony, this notwithstanding the fact that the witness was already under the rules of the court.

116. Defendant Elba González went with the government's main witness, Luis Monserrate Martínez, to the location where the body of the victim was found in order to record a video and familiarize the witness with the scene; this notwithstanding the fact that defendant Elba González knew, or had reasons belief, that Luis Monserrate Martínez had never been at the scene and had not witnessed the murder.

X.  First Cause of Action Wrongful Incarceration

117. Plaintiffs incorporate all paragraphs of this Complaint as is fully set forth under this cause of action and further alleges as follows.

118. Plaintiff Nelson Ruíz-Colón entered prison when he was 25 years old and was released when he was 49 years old.

119. At the time he was wrongfully accused of the Glorimar Perez murder, Plaintiff was a 25-year-old employee of Medical Emergencies ("Emergencias Médicas"), with no history of violence. He lived in the San Juan metropolitan area but went home to Aguada frequently to spent time with his mother, father, brothers, and sister.

120. Plaintiff Ruíz-Colón spent his free time with his family and friends. He also assisted his father in a family hardware business. He actively participated in sports such as biking and surfing.

121. Notwithstanding his eventual exoneration, Plaintiff's life has been ruined by the Defendants' misdeeds. Defendants improperly caused Plaintiff to be removed from his family and his environment, and abruptly thrusted him instead into the Puerto Rico prison system to fend for himself as a young man in a prison full of dangerous criminals.

122. Plaintiff's imprisonment was made even more arduous because he faced the stigma within the prison of having been convicted for raping and murdering a young woman in an abhorrent manner. As a result, Plaintiff was thoroughly shunned by the inmate population, and worse.

123. Despite a personal background which left him wholly unprepared for prison life, Plaintiff coped the best he could. In prison, Plaintiff became an avid reader, and he exhibited an exemplary conduct.

124. Plaintiff Nelson Ruíz-Colón served over two decades in prison before exoneration by DNA evidence. In serving over two decades in prison Plaintiff was wrongfully deprived of not only the end of his youth, but virtually his entire adult life to date.

125. Plaintiff Ruíz-Colón must now attempt to make a life for himself outside of prison without the benefit of the decades of life experiences which ordinarily equip adults for that task. Additionally, the emotional pain and suffering caused by losing     years in the prime of life has been substantial. During his wrongful incarceration, Plaintiff was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, births, funerals, and other life events with loved ones, the opportunity to fall in love and marry or to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

126. Plaintiff Ruíz-Colón was incarcerated when his daughter was only one year old. He missed actively participating in the upbringing of his child, taking her to the first day of school, attending her graduations, her sweet fifteen birthday and her companionship. He re-met his daughter as a 24 year old adult.

127. As a result of the foregoing, Plaintiff has suffered almost immeasurable damages, all proximately caused by Defendants' misconduct.

XII.    Second Cause of Action -- 42 U.S.C. § 1983 Due Process

128. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

129. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff Nelson Ruíz-Colón of his constitutional right to a fair trial.

130.   In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff Nelson Ruíz-Colón. Absent this misconduct, the prosecution of Plaintiff Nelson Ruíz Colón could not and would not have been pursued.

131. The Defendant Officers' misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States constitution.

132. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered, including, but not limited to, emotional distress, as is more fully alleged above.

133. The misconduct described in this cause of action was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

XII. Third Cause of Action---Conspiracy to Deprive Constitutional Rights

134. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

135. After the Glorimar Perez murder, the Defendants reached an agreement amongst themselves to frame Plaintiff Nelson Perez-Ruíz and others for the crime, and to thereby deprive Plaintiff Nelson Ruíz-Colón of his constitutional rights, all as described in the various Paragraphs of this Complaint.

136. Independently, before and after Plaintiff's convictions, each of the Defendants further conspired, and continue to conspire, to deprive Plaintiff of exculpatory

materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

137.  In this manner, the Defendants, acting in concert with other unknown co-conspirators, including persons who are not members of the Police of Puerto Rico and the Department of Justice of Puerto Rico, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

138.  In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

139.  The misconduct described in this cause of action was undertaken with malice, willfulness, and reckless indifference to the rights of others.

XIII – Fourth Cause of Action---Section 1983 Denial of Access to Courts

140.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

141.  In the manner described more fully herein, each of the Defendants, all while acting individually, jointly, and in conspiracy, denied Plaintiff the right to access to courts by their wrongful suppression of information and evidence which deprived Plaintiff of constitutional claims against potential Defendants.

142.  Other claims were diminished by the passage of years, and the accompanying erosion of evidence necessary to prove these claims against those

Defendants. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

XIV-Fifth Cause of Action---Failure to Intervene

143. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

144. In the manner described above, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct.

145. As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

146. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

XV—Sixth Cause of Action ---State Law Claim Malicious Prosecution

147. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

148. Defendants caused Plaintiff Nelson Ruíz Colón to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

149. The Defendants identified above accused Plaintiff Nelson Ruíz-Colón of criminal activity knowing those accusations to be without probable cause.

150. The instigation and filing of a criminal action against plaintiff Nelson Ruíz-Colón using statements of witnesses who purportedly participated or where privy to the charged was with knowledge that said statements were false and perjured. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

151. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.110. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

XVI--- Seventh Cause of Action---Damages--Article 1802 Civil Code of Puerto Rico.

152. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

153. As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired and are joint tortfeasors by concerted action to accomplish an unlawful purpose by unlawful means.

154. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity that resulted in damages to all Plaintiffs.

155. The misconduct and/or negligent actions described in this cause of action was undertaken with malice, willfulness, and reckless indifference to the rights of others.

156. As a proximate result of Defendants' conspiracy and negligence, Plaintiffs suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

157.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

158.  The acts and conduct of the Defendant Officers as set forth above were extreme and outrageous. The Defendant intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiffs, as is more fully alleged above.

159.  Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

160.  The misconduct described in this cause of action was undertaken with malice, willfulness, and reckless indifference to the rights of others.

161.  As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

XVII----Eight Cause of Action---Supervisory Liability

162.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

163.  A supervisor is defined loosely to encompass a wide range of officials who are themselves removed from the perpetration of the rights-violating behavior but may nonetheless be liable under 42 U.S.C.S. § 1983 for formulating a policy or engaging in conduct that leads to a civil rights violation committed by another.

164. Once an official has constructive or actual knowledge of the alleged deprivations, his failure to stop the conduct may constitute a constitutional violation. Under this rubric, a supervisor may be held liable for what he does (or fails to do) if his

behavior demonstrates deliberate indifference to conduct that is itself violative of constitutional rights. A plaintiff must also affirmatively connect the supervisor's conduct to the subordinate's violative act or omission. This affirmative connection need not take the form of knowing sanction, but may include tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct.

165. Pedro Goyco-Amador violated the constitutional rights of Plaintiff Nelson Ruíz-Colón in that he had either constructive or actual knowledge of the alleged constitutional violations carried out by personnel under his supervision.

166. Defendant Pedro Goyco-Amador did not mitigate the harm that he had bestowed on the Plaintiffs due to his negligence in supervision. When the only witnesses against Plaintiff Ruíz-Colón recanted and admitted to perjury a new trial was requested. Again Defendant Pedro Goyco-Amador incurred in gross negligence by failing to adequately investigate and corroborate the new version provided under oath by the witnesses which exonerated Plaintiff Ruíz-Colón from any responsibility.

167. As a supervisory official, Pedro Goyco-Amador is liable under Section 1983 for the behavior of his subordinates since the behavior of his subordinates resulted in a constitutional violation. The actions of Pedro Goyco-Amador as supervisor were affirmatively linked to that behavior such that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference.

168. As a consequence of the actions of Pedro Goyco-Amador, and other defendants that exercised supervisory responsibility over other defendants in this case,

Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

XVIII----Ninth Cause of Action---Breach of the Parent-Child Relationship

169. There is a right to due process in regard to the custody and care of a child in Section 1983 actions. Where custody has been unreasonably denied by officials acting under color of state law, a Section 1983 remedy for injury to the parent-child associational interest has been provided.

170. Even when the child is an adult and not living with the parent it has been determined that a constitutional line based solely on the age of the child should not be drawn. The Constitution protects more than the custody dimension of the parent-child relationship. The protected relationship includes the parent's interest in the companionship, care, custody, and management of the child.

171. Plaintiff Nelson Ruíz-Colón was only 21 years old and living with his parents when the ordeal related to the criminal investigation began. At the time the criminal case was filed, Plaintiff Nelson Ruíz-Colón was only 25 years old. Although living in San Juan, Plaintiff Nelson Ruíz-Colón kept a very close relationship with his parents; he frequently travelled to Aguada where he stayed during the weekend assisting his father in a family business.

172. The incarceration of Plaintiff Nelson Ruíz-Colón deprived his parents Plaintiffs Nelson Ruíz-Correa and Evangelista Colón of his companionship, care, and management. For over two decades Plaintiff Nelson Ruíz-Colón were forced to sporadically visit their son within the confines of a prison.

173. Plaintiff Leinelmar Ruíz Caceres was only a one year baby when she was deprived the companionship, care, custody, and management of her father. She grew up without a father losing the opportunity to obtain his advice, care and companionship. She lost the presence and companionship of her father during her birthdays, graduations and many other important events in her life.

174. Plaintiff Leinelmar Ruíz-Caceres was forced, as a child, to sporadically visit her father within the confines of a state prison, losing all the care and affection to which she was constitutionally entitled.

175. As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

XIV----Tenth Cause of Action---Punitive Damages

176. Punitive damages are reserved for instances where the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory damages.

177. A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

178. Also, a jury can impose punitive damages in order to punish the wrongdoer for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.

179. The conduct of the defendants that resulted in the fabrication of evidence and the presentation of perjured testimony in order to obtain the criminal conviction that

kept Plaintiff Nelson Ruíz-Colón in prison for over two decades is sufficiently outrageous to warrant punitive damages.

XV----Request for Damages

180. For the first cause of action of wrongful incarceration Plaintiff Nelson Ruíz-Colón requests that the defendants be imposed, jointly and severally, the amount of Five Million ($5,000,000) Dollars.

181. For the second cause of action of violation of due process Plaintiff Nelson Ruíz-Colón requests that the defendants be imposed, jointly and severally, the amount of Two Million ($2,000,000) Dollars.

182. For the third cause of action of conspiracy to deprive of constitutional rights Plaintiff Nelson Ruíz-Colón requests that the defendants be imposed, jointly and severally, the amount of Two Million ($2,000,000) Dollars.

183. For the fourth cause of denial of access to courts Plaintiff Nelson Ruíz-Colón requests that the defendants be imposed, jointly and severally, the amount of Two Million ($2,000,000) Dollars.

184. For the fifth cause of action of failure to intervene Plaintiff Nelson Ruíz-Colón requests that the defendants be imposed, jointly and severally, the amount of Two Million ($2,000,000) Dollars.

185. For the sixth cause of action of malicious prosecution Plaintiff Nelson Ruíz-Colón requests that the defendants be imposed, jointly and severally, the amount of Two Million ($2,000,000) Dollars.

186. For the seventh cause of action of damages pursuant Article 1802 of the Civil Code of Puerto Rico, plaintiffs requests that the defendants be imposed, jointly and severally, the amount of Two Million ($2,000,000) Dollars.

187. For the eight cause of action of supervisory liability Plaintiff Nelson Ruíz-Colón requests that the defendants be imposed, jointly and severally, the amount of Two Million ($2,000,000) Dollars.

188. For the ninth cause of action of breach of parent-child relationship plaintiffs request that the defendants be imposed, jointly and severally, the amount of Four Million ($4,000,000) Dollars.

189. For the tenth cause of action of punitive damages the plaintiffs request that failure to intervene Plaintiff Nelson Ruíz-Colón requests that the defendants be imposed, jointly and severally, the amount of Two Million ($2,000,000) Dollars.

WHEREFORE, Plaintiffs, Nelson Ruíz-Colón; Nelson Ruíz-Correa; Evangelista Colón and Leinelmar Ruíz-Cáceres, respectfully request that this Court enter judgment in their favor and against Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against Andrés Rodríguez-Elías individually and as member of the conjugal partnership existing with Jane Doe;  Ramon Pérez-Crespo, individually and as member of the conjugal partnership existing with Jane Roe; Antonio Maldonado-Trinidad individually and as member of the conjugal partnership existing with Carla Coe; Pedro Goyco-Amador individually and as member of the conjugal partnership existing with Dona Doe; Francisco Carbo-Marti individually and as member of the conjugal partnership existing with Grace Goe; Ernesto-Fernández individually and as member of the conjugal partnership existing with Jackie Joe; Víctor Burgos-Barroso individually and as member of the conjugal partnership existing with Jane Poe;

Elba-González individually and as member of the conjugal partnership existing with John Doe. Each of the individual Defendants in their individual capacities, as well as any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

In San Juan, Puerto Rico, this      day of September, 2017.

**S/Osvaldo Carlo-Linares**
USDC P.R. No. 126602
ocarlo@carlolaw.com
CARLO LAW OFFICES, LLC
1509 López Landrón – PH
American Airlines Bldg.
San Juan, Puerto Rico 00911
Tel. (787) 300-6483
Fax. (787) 726-6456