IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NELSON RUIZ COLÓN, et al.<br><br>Plaintiffs,<br><br>v.<br><br>ANDRÉS RODRÍGUEZ ELÍAS, et al.<br><br>Defendants. | CIVIL NO. 17-2223 (WGY) |

MOTION FOR RECONSIDERATION

TO THE HONORABLE COURT:

**COMES NOW** the Department of Justice of the Commonwealth of Puerto Rico, on behalf of codefendants Andrés Rodríguez Elías, Francisco Carbó Marty, Ramón Pérez Crespo, José Antonio Maldonado Trinidad, Pedro Goyco Amador, and José Ernesto Fernández Torres, through the undersigned attorney, without waving any right or defense arising from Title III of "Puerto Rico Oversight, Management and Economic Stability Act" ("PROMESA"), 48 U.S.C. §§ 2101 *et seq*. and the Commonwealth's Petition under said Title or under this case and without submitting to the Court's jurisdiction, and very respectfully SETS FORTH and PRAYS:

I.   INTRODUCTION

On September 23rd, 2017, Plaintiff Nelson Ruiz Colón filed the instant Complaint (**Docket No.** 1). Plaintiff's action includes events that took place over two decades ago. Thus, this is pre-bankruptcy petition under Title III of PROMESA.

Plaintiffs brought forth an assortment of claims that fall under the purview of the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution, and State Law Article 1802 of the P.R. Civil Code, against appearing Co-defendants Andrés Rodríguez Elías, Francisco Carbó Marty, Ramón Pérez Crespo, José Antonio Maldonado Trinidad, Pedro Goyco Amador, and José Ernesto Fernández Torres. Additionally, Co-Defendants Commonwealth Officials, sued in their individual capacities, are beneficiaries of Puerto Rico's Law 9 in accordance with its statutory framework under Law No. 104 of June 29, 1955, as amended, P.R. Laws Ann. tit. 32, § 3085[1] et seq. and the Regulation Regarding Legal Representation and Payment of Judgment, Regulation No. 8405 of 2013.

On June 30, 2016, the federal law known as PROMESA was enacted. Pursuant to PROMESA, on May 3, 2017, the Commonwealth of Puerto Rico ("Commonwealth"), by its representative pursuant to section 315 of PROMESA, the Financial Oversight and Management Board for Puerto Rico, filed a petition in the United States District Court for the District of Puerto Rico under Title III of PROMESA. *In re: Commonwealth of Puerto Rico*, Case No. 17-1578 ("Petition").

---

[1] Article 12 of law 104, as amended, is clear and precise in determining that:

> Every official, ex-official, employee or ex-employee of the Commonwealth of Puerto Rico who is sued for damages in his personal capacity, when the cause of action is based on alleged violations of the plaintiff's civil rights, due to acts or omissions committed in good faith, in the course of his employment and within the scope of his functions, **may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person**.

32 L.P.R.A. § 3085 (emphasis added). Law 9 of November 26, 1975 amended Law 104 by adding, among others, Article 12.

On February 22nd, 2018, the appearing Party filed a motion styled *Notice of Procedures for Filing Motions for Relief from the Automatic Stay in the Commonwealth of Puerto Rico's Title III Case* which, as the title implies, seeks to notify that "[p]*ursuant to Bankruptcy Code sections 362 and 922 […] the commencement of the Title III Case operates as an automatic stay of actions against the Commonwealth, including, among other things: the commencement or continuation of a judicial, administrative, or other action or proceeding against the Commonwealth or against an officer or inhabitant of the Commonwealth that was or could have been commenced before the commencement of the Title III Case, or to recover a claim against the Commonwealth or against an officer or inhabitant of the Commonwealth that arose before the commencement of the Title III Case.* ("the Title III Stay)." (**Docket 33, p. 2**). The goal: to curb any action to **collect, assess, or recover a claim against the debtor** –the Commonwealth– that arose before the commencement of the case under PROMESA outside the bankruptcy procedure.

Indeed, on August 17, 2017, the PROMESA Court entered the Second Amended Notice, Case Management and Administrative Procedures (*In re: The Financial Oversight and Management Board for Puerto Rico*, 17-3283 (LTS), Docket No. 1065-1) (as amended, the "*Case Management Procedures*"),[2] which, among other things, provides that all parties seeking to file a motion for relief from the Title III Stay (a "*Stay Relief Motion*") must comply

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Case Management Procedures.

3 | P A G E

with Paragraph III.Q of the Case Management Procedures and provide 15 business days' notice of such motion to the Oversight Board and AAFAF and meet and confer with the Commonwealth before filing a Stay Relief Motion (*see* **Docket No. 33**).[3]

Plaintiff filed an opposition on March 5th, 2018, arguing, mainly, that the defendants were not debtors under Title III since they were sued in their individual capacities, and that "under Law 404, the Secretary of Justice has broad discretion in authorizing the government to provide legal representation to government officials in their personal capacity … and the Secretary retains the discretion to provide ongoing legal representation and potentially pay the judgment against individual defendants pursuant to certain conditions established by law, and subject to the available resources. *See* P.R. Laws Ann. Tit. 32 § 3092."[4] On March 6th, 2018, the Court entered an order denying the motion (**Docket No. 35**).

The appearing Party respectfully submits that the instant case must be stayed pursuant to PROMESA's automatic stay that was triggered upon the filing of the Government's Petition. As shall be further discussed, this Honorable Court should conclude that the stay bars Plaintiff from continuing his collection efforts against the Government through the instant Complaint, since it is the Commonwealth—the debtor--the one

---

[3] On October 24, 2017, the PROMESA Court entered a *Third Amended Notice, Case Management and Administrative Procedures* [ECF No. 1512-1] (as amended, the "*Case Management Procedures*"). This third amended notice did not change the procedures for filing motions for relief from the automatic stay in the Commonwealth of Puerto Rico's Title III case. It simply allows the Title III debtors to enter into stipulations modifying the automatic stay without the court's immediate approval and file an omnibus motion every sixty (60) days identifying each automatic stay modification they have agreed to during that period and seeking the court's retroactive approval.

[4] See, Motion in Opposition to Stay, Docket No. 34 at page 3, ¶7.

responsible for representing Defendants in the present suit and ultimately responsible for paying the amount agreed upon in the covenant from the Debtor's estate.

## II.   ANALYSIS

**Pursuant to Section 922, 11 USCS § 922, the instant case must be stayed against defendants, officials represented under Law 104, as amended by Law 9.**

The appearing Party respectfully submits that, as a matter of practice, the Commonwealth provides legal representation to an overwhelming majority of employee defendants and plaintiffs litigate against Commonwealth lawyers, negotiate settlements with Commonwealth lawyers, and if they prevail, secure payment from the Commonwealth. Just because the Secretary of Justice is afforded some discretion, although not complete and final since any adverse determination by the Secretary of Justice is subject to judicial review, *see* P.R. Laws Ann. tit. 32, § 3087, in deciding whether to pay adverse judgments or not from funds drawn from the Commonwealth's pockets, that does **not** mean that *personal capacity claims do not seek to enforce a claim against the Debtor under PROMESA's stay provisions*. In fact, it's quite the opposite.

In essence, "[t]he automatic stay is among the most basic of debtor protections under bankruptcy law", Midlantic Nat'l Bank *v.* New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986); see also Jamo v. Katahdin Fed. Credit Union, 283 F.3d 292, 398 (1st Cir. 2002), and takes effect "immediately upon the filing of a bankruptcy petition "because the automatic stay is exactly what the name implies -- 'automatic' -- it operates without the necessity for

judicial intervention." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. Mass. Mar. 10, 1997)(citing Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113 (1st Cir. 1994)). It is aimed at "giv[ing] the debtor breathing room by "'stopping all collection efforts, all harassment, and all foreclosure actions.'" In re Soares, 107 F.3d at 975 (citations omitted); see also Jamo, 283 F.3d at 398. And, the stay "remains in force until a federal court either disposes of the case, see 11 U.S.C. § 362(c)(2), or lifts the stay, see id. § 362(d)-(f)", allowing "debtors to resolve their debts in a more orderly fashion [citation omitted], and at the same time safeguards their creditors". Id.

Section 922 has the effect of staying the cases against officials represented under Law 104, as amended by Law 9. Precisely, section 922(a)(1) provides that:

> A petition filed under this chapter [11 USCS §§ 901 et seq.] operates as a stay, in addition to the stay provided by section 362 of this title [11 USCS § 362], applicable to all entities, of-
> **(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an **officer** or inhabitant of the debtor that seeks to enforce a claim against the debtor…

11 USCS § 922 (emphasis ours).

The instant action is against Commonwealth former prosecutors and officers of the Police Department of Puerto Rico sued in their personal capacity. The PROMESA stay operates both to curb litigations expenses, which obviously eat away at Commonwealth funds, but also to avoid monetary claims to proceed against the Commonwealth *if* Plaintiffs

were to succeed in their claims against Defendants –which are beneficiaries of Law 9. See, e.g., In re Kmart Corp., 2002 U.S. Dist. LEXIS 24141, *at 4 & 8 (No.Dist.Ill., E.Div. 2002) (despite seeking injunctive relief the court denied the lift of stay inasmuch as Kmart would have to absorb the cost of litigating the Colorado ADA litigation, […] and also could be required to pay attorneys' fees pursuant to the ADA's fee-shifting provision, 42 U.S.C. § 12205", finding hardship for the debtor.)

The unrestricted expenditure of Government funds must change in light of the dire financial situation the Commonwealth is currently facing. The Commonwealth of Puerto Rico is under a bankruptcy proceeding under PROMESA, which requires the Government to adjust its expenditures in order to ensure funding of essential services and achieve fiscal responsibility. 48 U.S.C. § 2121(a). Costs of litigation, attorney's fees and payment of monetary judgments at the expense of the Commonwealth entreated in this civil rights case during bankruptcy proceeding under PROMESA **must be sought through the PROMESA case**, otherwise it would yield the unwarranted result of suffocating the Commonwealth's fisc, eschewing the clear purpose of PROMESA and its Title III proceedings.

The case of In re City of Stockton, 484 B.R. 372 (Bankr. E.D. Cal.2012), wherein the defendants were individual capacity municipality officials, illustrates how section 922 interplays with the present case. The In re City of Stockton Court recognized that "in chapter 9 municipal debt adjustment cases", there is an "additional automatic stay imposed by 11

U.S.C. § 922(a)", "supplement[ing] the basic automatic stay of 11 U.S.C. § 362 by stopping actions against municipal officers and inhabitants to enforce a claim against the municipality." 484 B.R. at 374; see also In re Jefferson County, 474 B.R. 228, 247-248 (Bankr. N.D. Ala., 2012).  In re City of Stockton held that "the § 922(a) stay will not be modified to permit a lawsuit against municipal officers to proceed." Id.  **In § 922(a), the phrase 'to enforce a claim against the debtor' necessarily encompasses both direct and indirect claims** against a municipality." Id. at 378 (Emphasis ours).  "[T]he additional automatic stay of § 922(a), rather than the § 362 automatic stay, directly protects municipal officers in chapter 9 cases without the need for a court to perform the mental gymnastics required to extend the § 362 automatic stay."  In re Stockton, 484 B.R. at 375-376 (underline ours).

The California court, in recognizing the sovereign immunity landscape related to doctrines associated with Ex Parte Young, 209 U.S. 123 (1908), further stated:

> **The action against the individual officers is an exercise of the well-known strategy of suing a sovereign by falsely pretending to sue an officer**. To the extent that there is a judgment against the individuals, the City, having undertaken their defense, will be required to pay the judgment. Cal. Gov't Code §§ 825 & 825.2. Hence, the civil action against the individuals "seeks to enforce a claim against the debtor" within the meaning of § 922(a). 11 U.S.C. § 922(a)(1).

Id. at 376; see also id. at 378. (Our emphasis)

It is respectfully submitted that Plaintiff (and for that matter, 99% of plaintiffs suing the Commonwealth) cannot *with a straight face* argue that it is **not** his objective to gain access to

the Commonwealth's deep pockets, although not deep at all these days. In fact, it has been the long standing practice to sue public officials to reach the Government of Puerto Rico's pockets as the vast majority of public officers cannot satisfy adverse judgments themselves. See Díaz-Rodríguez v. Figueroa, Civil No. 12-1243 (SCC), where many police officers were sued, many of which were afforded legal representation and payment of settlement pursuant to Law 9, and these monetary claims were paid notwithstanding the severe allegations of civil rights violations (see **Docket Nos. 219, 234 and 239**). Yet, those officers which had no Law 9 benefit (for whichever reason) fell prey to default judgment on October 3, 2016 (**Docket No. 232**) and **absolutely no efforts** whatsoever were made to recover monetary compensation (see generally Díaz-Rodríguez v. Figueroa, Civil No. 12-1243 (SCC)). There, we have but just one example of an overwhelming majority of Government employee defendant cases that the Government of Puerto Rico bears the cost of litigation of suits against its employees[5], regardless of what capacity they are sued in. In that same vein, the Government of Puerto Rico pays for the vast majority of adverse judgments against its employees who sought refuge under Law 9. And this is exactly what happened in the case at bar.

As expounded by In re City of Stockton:

> These doctrines tolerating suits by indirection were so embedded in the law of sovereign immunity at the time of the enactments of § 922(a) and its

---

[5] *See* 32 L.P.R.A. § 3090 ("Every respondent covered by the provisions of §§ 3085-3092a of this title who applies to the Commonwealth for legal representation may be represented in the suit by attorneys from the Department of Justice or by attorneys in private practice upon authorization of the Secretary of Justice. **In these cases, the Commonwealth shall defray the reasonable cost of said legal representation from a special fund created for this purpose.**" (Our emphasis)

predecessors that it is apparent that the additional automatic stay was designed to deal with situations like the one now in issue.

Id. 378.

The benefit of legal representation alluded in In re Stockton is governed by the California Government Code § 825, which language is **very similar** to the provisions of legal representation under Law 104, as amended.

Indeed, in its relevant part, § 825[6] reads:

> Except as otherwise provided in this section, **if an employee or former employee of a public entity requests the public entity to defend him or her** against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity **and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates** in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.
>
> If the public entity conducts the defense of an employee or former employee against any claim or action with his or her reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed. However, where the public entity conducted the defense pursuant to an agreement with the employee or former employee reserving the rights of the public entity not to pay the judgment, compromise, or settlement until it is established that the injury arose out of an act or omission occurring within the scope of his or her employment as an employee of the public entity, the public entity is required to pay the judgment, compromise, or settlement only if it is established that the injury arose out of an act or omission occurring in the scope of his or her employment as an employee of the public entity.

---

[6] Cal. Gov't Code § 825 (Deering, Lexis Advance through Chapter 9 of the 2017 Regular Session).

> Nothing in this section authorizes a public entity to pay that part of a claim or judgment that is for punitive or exemplary damages." (Our emphasis)

In like manner, as to Law 104[7], as amended, it states that:

> **Every official, ex-official, employee or ex-employee of the Commonwealth of Puerto Rico who is sued** for damages in his personal capacity, when the cause of action is based on alleged violations of the plaintiff's civil rights, due to acts or omissions committed in good faith, in the course of his employment and within the scope of his functions, **may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person**. The Executive Directors, former Executive Directors, members and former members of the governing boards of public corporations and Government instrumentalities, mayors and former mayors and officials and former officials of the municipalities, as well as the members and former members of the Municipal Police Corps of the different ranks, shall be covered by what is hereby provided, except for the payment of judgments, which shall be governed by the provisions of § 3092 of this title. Any action brought under the provisions of §§ 3077-3092a of this title shall not be covered by the provisions of this section.
>
> Likewise, these provisions shall not be construed, for any reason whatsoever, as making the Commonwealth an insurer of the aforesaid public servants, **nor as a waiver of the sovereign immunity of the Commonwealth**." (Our emphasis)

Clearly, under both schemes, there are conditions that must be met before the Government of Puerto Rico, the debtor in the PROMESA case, **is required to pay**. Indeed, the only difference here between the two is that in the case of the Government of Puerto Rico, there are two steps before paying the judgment: 1) to offer legal representation and 2) to pay the adverse judgment. Whereas in California, the decision to defend controls payment of

---

[7] 32 L.P.R.A. § 3085

11 | P a g e

the judgment. But again, under both rubrics, officers must meet certain conditions **and** the public entity must decide to act in their favor.

The fact of the matter is that the Secretary of Justice can only, **and we stress only**, deny payment of an adverse judgment if the acts or omissions incurred by the sued official, ex-official, employee or ex-employee (a) constitute a crime, (b) when the acts occur outside the scope of his official functions, (c) when inexcusable negligence intervenes, and (d) when a different state of law has been established jurisprudentially by a final and binding judgment." 32 L.P.R.A. § 3088. Furthermore, the Secretary of Justice bases the determination to pay an adverse judgment not on a whim, but on the court's factual findings or the evidence presented, and, as previously noted, this determination **is subject to Judicial Review** in the Puerto Rico Courts. 32 L.P.R.A. § 3087. Consequently, the level of discretion afforded to the Secretary of Justice is much narrower.

> **The PROMESA Court and other courts have extended the protections of the Title III stay as applicable in all respects to government officials, any inhabitant acting as agent, and non-bankrupt party.**

The PROMESA Court, through its presiding Judge, Hon. Laura Taylor Swain, has decreed that "[f]or the avoidance of doubt, the protections of Bankruptcy Code section 922(a)(1) with respect to officers and inhabitants of the Debtors, as set forth in paragraph 4(a) above, apply in all respects to the **Debtors' officers in both their official and personal capacities with respect to actions whereby parties pursuing such actions seek to enforce**

claims against any of the Debtors." (In re: The Financial Oversight and Management Board for Puerto Rico, 17-3283 (LTS), Docket No. 543, p. 3-4, ¶ 5).

As further buttressed by Judge Taylor Swain in the PROMESA case 17-3283:

> For the avoidance of doubt, the protections of the Bankruptcy Code Sections 105(a) and 922(a)(1), made applicable by PROMESA section 301(a), the Tittle III stays applies **in all respects** to (a) **government officials** (including without limitation, the Governor), agents, and representatives of (i) the Debtors and (ii) any of the Debtors' instrumentalities, and (b) any inhabitant of the Debtors, each solely with respect to actions whereby parties, pursuing such action **seek to enforce claims against any of the Debtors**, and provided such Title III Stay is in effect with respect to such Debtor and the pursued action.

(Docket 543 at 4, ¶ 6) (Emphasis ours). Moreover, District Court retained jurisdiction "to hear and determine all matters arising from or related to the implementation, enforcement, or interpretation of this Order." (Id., p. 6, ¶ 15) (Our emphasis)

Indeed, the PROMESA Court has not only availed the extension of the automatic stay to cases against Commonwealth officers sued in personal capacity, but has also **DENIED relief from stay** (In re: The Financial Oversight and Management Board for Puerto Rico, 17-3283 (LTS), Docket No. 1205). Plaintiff Maria J. Diaz-Castro ("Díaz-Castro") sought "*relief from the automatic stay imposed by the filing of the* [Commonwealth's] *Title III case in a money damages action, as a result of her wrongful imprisonment, commenced on October 25, 2016 in the District Court for the District of Puerto Rico, against the Commonwealth of Puerto Rico and certain inhabitants of Puerto Rico in their personal capacity, captioned Maria Judith Díaz-*

*Castro, representing her minor age son W.C.D. v. Commonwealth of Puerto Rico, et al., Civil Case No. 16-2873."*[8] (Id., p. 1)

In support for stay relief, Díaz-Castro argued that "*she is not a creditor of the Commonwealth because her claim will be excluded from a bankruptcy discharge* [and further asserted] *that there are defendants being sued in their personal capacities.*" (Id., p. 2). However, "*deeply mindful of the serious nature of the factual allegations underlying the Lawsuit,*" the PROMESA Court concluded that:

> Section 362(a) of the Bankruptcy Code, made applicable by Section 301(a) of PROMESA, 48 U.S.C. § 2161, imposes an automatic stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1); see also PROMESA § 301(a) (incorporating 11 U.S.C. § 362 into Title III cases).Section 922(a)(1), made applicable by Section 301(a) of PROMESA, 48 U.S.C. § 2161, stays actions and proceeding against officers or inhabitants of a Title III debtor that seek to enforce claims against the Debtor. <u>These stays apply here to Movant's claims against</u> the Commonwealth, the Commonwealth's Department of Justice and police department, and <u>the Commonwealth's inhabitants who are sued for actions taken as agents of the Commonwealth.</u>"

(Id., p. 3) (Our emphasis). Thus, the PROMESA Court has categorically decreed that the automatic stay applies to cases against Commonwealth's inhabitants who are sued for actions taken as agents of the Commonwealth –such as the instant one.

---

[8] The Commonwealth of Puerto Rico is sued under Plaintiff's theory that "[p]*ursuant to Commonwealth of Puerto Rico v. Luis Sánchez Valle, 579 U.S. __ (2016), the Commonwealth of Puerto Rico is not a sovereign; thereby the sovereign immunity clause of the Eleventh Amendment of the United States Constitution is inapplicable.*" (*See Díaz-Castro, et al., v. Commonwealth, et al.,* Civil No. 16-2873 (CCC), Docket No. 1, p. 3, ¶ 8). However, it is respectfully submitted that Plaintiff's reliance on the Sanchez-Valle decision is misplaced, and consequently, this claim against the Commonwealth under this theory is doomed to fail.

Importantly, the United States Court of Appeals for the First Circuit ("USCA") has already weighed the arguments in a case similar to the case at bar (claims against a Commonwealth Officer sued in personal capacity) and has extended the automatic stay pursuant to the Petition under PROMESA. Indeed, the USCA case of <u>Cano-Rodríguez v. De Jesús-Cardona</u>, USCA Case Number 16-1532 supports Defendants reasoning behind staying a case against a personal capacity defendant: the bankruptcy stay provisions of 11 U.S.C. §§ 362 and 922 are incorporated into PROMESA and, in conducting a section 922(a) stay analysis, its logical conclusion is that it applies to a personal capacity suit against a Commonwealth official. Accordingly, the appearing Party's PROMESA stay arguments have already proved to be successful with the USCA. Furthermore, the appearing Party adds two more cases that highlight the USCA's stance on the matter: the first: <u>Pabón-Ortega v. Llompart-Zeno</u>, USCA Case Number 16-1599 and the second, <u>Besosa-Noceda, et al v. Capo-Rivera, et al.</u>, USCA Case Number 16-2117. Both of these cases were stayed by the USCA. By the same token, the Fourth Circuit has influentially considered the issue of under what circumstances does a non-bankrupt party benefit from a section 362(a)(1) stay. <u>In re N. Star Contracting Corp.</u>, 125 B.R. 368, 370-71 (S.D.N.Y. 1991). According to the <u>Star Contracting</u> Court, "[t]he Fourth Circuit determined that a stay may be imposed against a non-bankrupt party under special circumstances: when an identity of interest exists between the debtor and third party non-debtor to the extent that the debtor is the real party defendant and that a

judgment against the third party non-debtor will affect directly the debtor." Id., citing A.H. Robins Co., Inc., 788 F.2d at 999.  Indeed, the Robins Court, and others, "have recognized that an identity of interest exists between a debtor and a third party non-debtor when a right to indemnification exists. These courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets." (Id.) That is exactly what occurs in the case at bar, and cases of similar ilk against Commonwealth officers

The stay "can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." FPSDA II, LLC v. Larin (In re FPSDA I, LLC), Nos. 10-75439, 12-08032, 2012 Bankr. LEXIS 5906, at *24-25 (U.S. Bankr. E.D.N.Y. Dec. 21, 2012) citing Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287-288 (2d. Cir. 2003); see also In re: The Financial Oversight and Management Board for Puerto Rico, 17-3283 (LTS), Docket No. 1205, p. 4 ("[T]he Lawsuit is far from ready for trial; furthermore, **any remaining pretrial proceedings and a trial would require the expenditure of Debtor resources** and potentially disrupt the claims resolution process established by the bankruptcy code and incorporated into PROMESA.") (Our emphasis). Certainly, if the instant case were still ongoing (which it is obviously not) and were to proceed unfettered, any pretrial proceedings and a trial would require the expenditure of Debtor's resources, since the Commonwealth of Puerto Rico Department of Justice represents the individual defendants.

"[U]*nusual circumstances*" demand the application of the stay to a non-debtor, such as "*the case of 'a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case,' or perhaps more generally where 'a debtor and non-debtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law,' or some other situation where the identity and interests of the debtor and the non-debtor are so intertwined that the debtor can fairly be said to be the real party in interest in the matter sought to be enjoined.*" In re FPSDA I, LLC, 2012 Bankr. LEXIS 5906, at *24-25 (citing A.H. Robins Co., Inc., 788 F.2d 994 (4th Cir. 1986)). Just as alleged by Plaintiff, Defendant in the instant lawsuit acted pursuant to official Commonwealth business and not by personal choice. Otherwise, there would be a failure to state a claim under § 1983. Finally, other Sister Courts in our District have welcomed this approach as it pertains to suits against Commonwealth officials, with and without the Commonwealth as defendants, and have stayed the proceedings in light of the automatic stay under PROMESA (*e.g.* Natal-Feliciano, et al., v. Nevárez-Maldonado, et al., 14-1844 (CCC), Docket No. 81; Diaz-Castro, et al., v. Commonwealth of Puerto Rico, et al., 16-2873 (CCC), Docket No. 31; Alvarado-Solivan v. Comisión Estatal de Elecciones, 16-1458 (GAG), Docket No. 57; Marrero-Méndez v. Pesquera, et al., Civil Case No. 13-1203, Docket No. 131; Pizarro-Correa v. Puerto Rico Internal Revenue Department, et al., 16-2598 (FAB), Docket No. 33 and 34; Lugo-Matos, et

al., v. Rivera-Torres, et al., 14-1839 (JAG/SCC), Docket No. 69; Cruz-Rodríguez, et al., v. Molina, et al., 12-1189 (PG), Docket No. 85, 99 and 101; Carmen Lidia Jorge, et al., v. PRPD, et al., 11-2268 (JAG), Docket No. 277, Fernández-Jorge, et al., v. Galarza, et al., 14-1590 (JAG), Docket No. 142; and others.)

The appearing Party requests the Court to join the afore-mentioned Sister Courts in our District and, in doing so, respect PROMESA's automatic stay that applies to the present case, and direct Plaintiff to seek redress in the PROMESA Court, if he so wishes.

### III.   CONCLUSION

In light of the above stated, the appearing Party respectfully request the Court to respect the automatic stay pursuant to the Petition under Title III of PROMESA.

WHEREFORE, appearing Defendant respectfully requests the Court to respect the automatic stay pursuant to the Petition under Title III of PROMESA.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico on this 15th day of March, 2018.

IT IS HEREBY CERTIFIED that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

WANDA VÁZQUEZ GARCED
Secretary of Justice

**WANDYMAR BURGOS VARGAS**

Deputy Secretary in Charge of Litigation

SUSANA PEÑAGARÍCANO-BROWN
Director of Federal Litigation Division

*S/Idza Diaz Rivera*
IDZA DÍAZ RIVERA
USDC-PR No. 223404
Federal Litigation Division
Department of Justice
P.O. Box 9020192
San Juan, PR  00902-0192
Email: diazrivera.esq@gmail.com
           idiaz@justicia.pr.gov